UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AT&T COMMUNICATIONS – EAST,
INC., f/k/a AT&T Communications, Inc.,
a Delaware Corporation; AT&T CORP.,
f/k/a American Telephone and Telegraph
Company, a New York Corporation,

                    Plaintiffs,

        v.

CENTRAL PUGET SOUND
REGIONAL TRANSIT AUTHORITY, a
Regional Transit Authority; BNSF
RAILWAY COMPANY f/k/a Burlington
Northern and Santa Fe Railway Company,
f/k/a Burlington Northern Railroad
Company,

                    Defendants.
_____

CENTRAL PUGET SOUND
REGIONAL TRANSIT AUTHORITY, a
Regional Transit Authority,

                    Defendant/Third-
                    Party Plaintiff,

        v.

LEVEL 3 COMMUNICATIONS, LLC, a
foreign limited liability corporation; MCI
COMMUNICATIONS SERVICES, INC.,
d/b/a Verizon Business Services,

                    Third-Party
                    Defendants.

CASE NO. C07-5186BHS

ORDER DENYING BNSF
RAILWAY COMPANY'S
FRCP 12(b)(6) MOTION TO
DISMISS AND GRANTING IN
PART AND DENYING IN
PART BNSF RAILWAY
COMPANY'S MOTION FOR
CONTINUANCE

ORDER - 1

This matter comes before the Court on BNSF Railway Company's FRCP 12(b)(6) Motion to Dismiss (Dkt. 56) and BNSF Railway Company's Motion for Continuance (Dkt. 59). The Court has considered the pleadings filed in support of and in opposition[1] to the motions and the remainder of the file and hereby denies the motion to dismiss and grants in part and denies in part the motion for continuance for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2007, AT&T Communications – East, Inc. and AT&T Corp. ("AT&T") filed a declaratory judgment action. Dkt. 1. The facts, according to the second amended complaint, are as follows: In 1987, AT&T sought to install a fiber optic telecommunications transmissions system and certain equipment and structures along a railroad corridor between Renton, Washington and Eugene, Oregon. Dkt. 48 at 3. The railroad corridor was owned and controlled by Burlington Northern Railroad Company, now known as BNSF Railway Company ("BNSF"). *Id.* On July 21, 1987, AT&T entered into a right-of-way agreement ("the ROW Agreement") with BNSF whereby BNSF granted AT&T an easement and other rights. *Id.* Pursuant to the ROW Agreement, AT&T constructed and installed fiber optic cable facilities within the railroad corridor between Renton and Eugene, including the BNSF line between Tacoma and Lakewood in the State of Washington. *Id.* at 5.

On September 25, 2003, the Central Puget Sound Regional Transit Authority ("Sound Transit") board of directors authorized the acquisition of certain real property interests owned by BNSF, and BNSF agreed to sell certain real property to Sound Transit in lieu of condemnation. *Id.* By quitclaim deeds, BNSF conveyed to Sound Transit the Lakeview North Rail Line Property, the Lakeview South Rail Line Property, and the Lakeview Stations Property. *Id.* at 6. On September 28, 2004, BNSF assigned all of its rights to any existing easements affecting or relating to the Lakeview North Rail Line

---

[1] Sound Transit and AT&T were the only parties to respond to BNSF's motion to dismiss. Sound Transit filed an opposition only to request that the Court decide Sound Transit's jurisdictional motion before ruling on BNSF's motion. *See* Dkt. 67 at 2.

Property to Sound Transit, and Sound Transit correspondingly assumed all duties and obligations under such easements. *Id.* at 6-7.

On July 6, 2006, Sound Transit notified AT&T that Sound Transit acquired BNSF's railroad right-of-way running from M Street in Tacoma to Nisqually, Washington and intended to start construction of two projects within the right-of-way in January of 2007. *Id.* at 7. Sound Transit further notified AT&T that its facilities must be relocated prior to commencement of the work in order to avoid removal of the facilities. *Id.* at 7-8.

On August 16, 2006, AT&T provided Sound Transit with a copy of the ROW Agreement and notified Sound Transit that it was entitled to compensation of actual costs and expenses associated with the relocation of its fiber optic cable facilities. *Id.* at 8.

Plaintiffs contend that they never consented to an assignment of their rights and obligations under the ROW Agreement to Sound Transit. *Id*. Plaintiffs contend that they are under no obligation to relocate their facilities at their own expense. Plaintiffs seek a judgment declaring that Sound Transit "does not have any authority under the ROW Agreement to require AT&T to relocate its fiber optic cable facilities" and that if Sound Transit has such authority, Plaintiffs are entitled to reimbursement of actual costs and expenses pursuant to the ROW Agreement or to RCW 8.26.010, *et seq. Id.* at 10.

On July 25, 2007, after the complaint was filed, Plaintiffs' counsel received a copy of an Assignment and Assumption of Third Party Leases/Easements/Licenses between BNSF and Sound Transit. Dkt. 37 at 3. This document apparently contradicts Plaintiffs' belief that BNSF did not assign its rights under the ROW Agreement to Sound Transit. Plaintiffs contend that if BNSF's assignment of the ROW Agreement was valid, BNSF may be in breach of the ROW Agreement.

Plaintiffs therefore sought leave of Court to file an amended complaint adding BNSF as a defendant. Dkt. 37. Sound Transit did not oppose the motion but asked the Court to leave all scheduling deadlines as previously set. Dkt. 39. Level 3 Communications, LLC ("Level 3") and MCI Communications Services, Inc. ("MCI") did

not respond to the motion. The Court granted Plaintiffs leave to amend their complaint and add BNSF as a defendant, and noted that "it appear[ed] that adding BNSF would not disturb the Court's jurisdiction." Dkt. 41 at 5. Plaintiffs thereafter filed an amended complaint including BNSF as a defendant. Dkt. 42.

BNSF now moves to dismiss, contending that the doctrines of claim preclusion and issue preclusion warrant dismissal of Plaintiffs' claims. Dkt. 56. More specifically, BNSF contends that the claims and issues raised in the instant case were adjudicated in *AT&T Communications-East, Inc. v. BNSF Railway Co*, 2006 WL 3408035 (D. Or.). The facts alleged in that case are as follows:

Pursuant to the ROW Agreement, AT&T constructed facilities along BNSF's railway corridor right-of-way. Section 11(b) of the ROW Agreement entitles AT&T to recovery of actual costs and expenses when AT&T is required to relocate its facilities to accommodate third parties.

In 1997, BNSF granted a surface easement to Portland & Western Railroad ("P&W Railroad"), a defendant in the Oregon litigation, to use a portion of the railway corridor. In the Oregon case, P&W Railroad maintained that the ROW Agreement constituted an assignment of BNSF's rights and obligations under the agreement. By quitclaim deed, BNSF conveyed its interest in certain railway corridors, subject to AT&T's easement, to the State of Oregon.

In 2000, the State of Oregon received approval to construct a commuter rail line along the railway corridor. In November of 2002, AT&T gave notice that the commuter rail line project appeared to conflict with the location of AT&T's facilities. P&W Railroad requested that AT&T relocate the facilities at AT&T's expense to accommodate the commuter rail line. In April of 2006, BNSF contended that the relocation of AT&T's facilities was not governed by the ROW Agreement and that AT&T would therefore be required to address P&W Railroad and other parties directly to seek reimbursement of costs and expenses. AT&T was unable to obtain compensation for expenses and sued under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Uniform Relocation

Assistance and Real Property Policies Act of 1970 ("URA"), 42 U.S.C. § 4601. In the Oregon litigation, AT&T sought a declaratory judgment that P&W Railroad and other third parties lacked authority under the Oregon ROW Agreement to require A&T to relocate the facilities and that if the Oregon ROW Agreement conferred such authority, AT&T was entitled to reimbursement.

In the Oregon case, the court held that AT&T's easement ran with the land because BNSF conveyed the underlying property subject to AT&T's easement. *AT&T Communications-East, Inc.*, 2006 WL 3408035 at *8. Because the right to compel AT&T to relocate its facilities at its own expense was a term and condition of AT&T's easement, the recipient of the conveyed property succeeded to BNSF's right to compel relocation of AT&T's facilities under Section 11(a). *Id.*

## II. BNSF'S MOTION TO DISMISS

Motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When deciding a motion to dismiss, the Court's consideration is generally limited to the pleadings. Fed. R. Civ. P. 12(d).

In this case, BNSF offers three theories in support of its motion to dismiss: (1) AT&T does not allege that BNSF requested or directed AT&T to relocate its fiber optic cable facilities and therefore no claim is stated against BNSF, (2) AT&T's claims were raised in the Oregon litigation and are therefore barred by the doctrine of claim

1  preclusion, and (3) the issues raised in the instant case were litigated and decided in the

2  Oregon litigation and are therefore barred by the doctrine of issue preclusion. Dkt. 56.

3  **A.  MOTION TO STRIKE**

4      AT&T filed a surreply to strike "inaccurate and misleading assertions" in BNSF's

5  reply brief. Dkt. 73 at 4. AT&T essentially disputes the accuracy of BNSF's

6  characterization of the Oregon litigation. The Oregon opinion has been filed with the

7  Court as an exhibit, and the Court is therefore capable of reviewing the opinion and is not

8  reliant upon the parties' quotations or analyses of the opinion. AT&T's disagreement with

9  BNSF's analysis of the import and meaning of certain portions of the Oregon opinion is

10 not a proper basis for striking the reply brief.

11     In addition, the Court declines to consider AT&T's contention that the Oregon

12 litigation includes different witnesses and evidence. Dkt. 73 at 4. This issue was raised in

13 BNSF's motion. Dkt. 56 at 11. AT&T had a full and fair opportunity to address the matter

14 in the response and cannot employ a surreply to merely address matters that were raised

15 in the original motion. AT&T's motion to strike is therefore denied.

16 **B.  FAILURE TO STATE A CLAIM**

17     BNSF contends that it has the right, under sections 11(a) and 11(b) of the ROW

18 Agreement, to direct AT&T to relocate its fiber optic cables and facilities and that AT&T

19 fails to state a claim against BNSF because Sound Transit, not BNSF, requested that

20 AT&T relocate its fiber optic cable facilities. Dkt. 56 at 8-9. AT&T does assert two

21 claims that do not hinge upon whether BNSF requested that AT&T relocate its facilities;

22 namely, AT&T seeks a declaration that BNSF's assignment to Sound Transit is void and

23 seeks damages for breach of contract because BNSF failed to secure AT&T's written

24 consent to assignment. Dkt. 48 at 12-14. The Court therefore declines to dismiss AT&T's

25 claims on this ground.

26 **C.  CLAIM PRECLUSION**

27     Federal courts sitting in diversity jurisdiction apply the claim preclusion rules of

28 the forum state in which the Court sits unless the law of the forum state is incompatible

with federal interests. *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Res judicata, or claim preclusion, bars litigation of any claims that were raised or could have been raised in the prior action. *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). Res judicata applies when there is "1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." *Id.* Res judicata applies when the prior judgement and the second action are similar with respect to the subject matter, the cause of action, the persons and parties, and the quality of the persons for or against whom the claim is made. *Feminist Women's Health Center v. Codispoti*, 63 F.3d 863, 866 (9th Cir. 1995). A change in the legal theory underlying claims brought in the first round of litigation will not defeat res judicata. *See Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 988 (9th Cir. 2005).

In this case, AT&T disputes only whether the Oregon case involved different causes of action because AT&T did not assert a breach of contract claim in the Oregon litigation and in fact asserted a contrary position, contending that there was no assignment. Dkt. 65 at 7-8. Similarly, AT&T contends that the cases differ because AT&T did not contend that BNSF's assignment to P&W Railroad was invalid. *Id.* at 8.

To determine whether the causes of action are identical, courts consider the following:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). The last of these criteria is considered most important, and "[n]o single criterion can decide every res judicata question [because] identity of causes of action cannot be determined precisely by mechanistic application of a simple test." *Feminist Women's Health Center*, 63 F.3d at 867; *Costantini*, 681 F.2d at 1202 n.7.

1          **1.      Impairment of Rights and Interests Established in Oregon Litigation**

2          BNSF contends that the Oregon District Court's decision would be destroyed by a

3    contrary result here because the Oregon court determined BNSF and AT&T's rights and

4    obligations under the ROW Agreement and because AT&T's claims are essentially

5    identical. Dkt. 56 at 11. AT&T contends that the Oregon litigation involved different

6    rights and interests because this case includes a breach of contract claim whereas the

7    Oregon litigation did not. Dkt. 65 at 7.

8          While the Oregon complaint does not include breach of contract as a ground for

9    recovery, AT&T did contest whether BNSF reserved its rights and obligations under the

10   ROW Agreement despite BNSF's conveyance of property. *See* Dkt. 66-2, Exh. A at 4;

11   *AT&T Communications-East, Inc.*, 2006 WL 3408035 at *8. Here too, AT&T contends

12   that BNSF did not assign its rights under the ROW Agreement through BNSF's

13   conveyance to Sound Transit. Dkt. 48 at 9-10. AT&T's contention in the Oregon

14   litigation that there was no assignment of BNSF's rights under the ROW Agreement is

15   not materially different from its contention that BNSF's assignment of its rights under the

16   ROW Agreement in this case is null and void.

17         Nevertheless, it is unclear whether resolution of this case may impair rights

18   established in the Oregon litigation. Rights established in the Oregon litigation were

19   related to BNSF's conveyance to the State of Oregon. Absent evidence regarding the

20   conveyance in this case and the conveyance in the Oregon litigation, the Court cannot

21   conclude that rights established in the Oregon litigation will be impaired by the resolution

22   of this case.

23         **2.      Similarity of Evidence**

24         BNSF contends that this case and the Oregon litigation implicate the same primary

25   witnesses and documents that are substantially the same or identical. Dkt. 56 at 11. While

26   BNSF does no more than assert that the evidence would be similar, AT&T does not refute

27   this contention in the response, and the Court therefore deems the issue admitted.

28

### 3.    Infringement of the Same Right

AT&T is claiming the infringement of the same right in this matter as in the Oregon litigation. AT&T contends that it is under no obligation to relocate its facilities at its own expense. Dkt. 48 at 9. In the Oregon litigation, AT&T similarly contended that it was not obligated to relocate its facilities and was entitled to reimbursement to the extent that relocation was required. Dkt. 66-2, Exh. A at 8.

### 4.    Same Transactional Nucleus of Facts

The Court is not persuaded that the Oregon litigation and this case arise from the same transactional nucleus of facts. The Oregon litigation centered on BNSF's conveyance of rail corridors located in Oregon to the State of Oregon. This case centers on BSNF's conveyance of property located in a different state to a different party. The only similarities between the Oregon case and this case are the identities of AT&T and BSNF and the ROW Agreement. These similarities do not persuade the Court that AT&T is attempting to relitigate claims that were raised or could have been raised in the Oregon case. In this respect, BNSF's Motion to Dismiss (Dkt. 56) is denied.

## D.    ISSUE PRECLUSION

Federal courts sitting in diversity jurisdiction apply the issue preclusion rules of the forum state. *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cr. 1994). Washington courts apply federal law to determine the preclusive effect of prior federal judgments. *Id.* Collateral estoppel, or issue preclusion, prevents relitigation of issues actually litigated and necessarily decided where there has been a prior proceeding and a full and fair opportunity for litigation in that proceeding. *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 128 S. Ct. 2161 (2008).  A federal court decision has a preclusive effect if (1) the issue necessarily decided during previous proceeding is identical to the one in the instant matter; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was either a party, or is in privity with a party, in the first proceeding. *Id.*

1    When deciding whether the issue decided in the previous proceeding is identical,

2    the Court considers the following:

3        (1) is there a substantial overlap between the evidence or argument
         to be advanced in the second proceeding and that advanced in the first?
4        (2) does the new evidence or argument involve the application of
         the same rule of law as that involved in the prior proceeding?
5        (3) could pretrial preparation and discovery related to the matter
         presented in the first action reasonably be expected to have embraced the
6        matter sought to be presented in the second?
         (4) how closely related are the claims involved in the two
7        proceedings?

8    *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999). If there is any

9    doubt as to whether the issue was actually adjudicated in the prior proceeding, collateral

10   estoppel will not apply. *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980).

11       With respect to the third prong, privity is a legal conclusion "designating a person

12   so identified in interest with a party to former litigation that he represents precisely the

13   same right in respect to the subject matter involved." *Kourtis*, 419 F.3d at 996. To bind

14   litigants to a judgment rendered in an earlier litigation to which they were not parties

15   violates notions of due process unless the litigants were adequately represented in the

16   previous litigation. *Id*.

17       AT&T contends that several issues raised in this case were not litigated or

18   necessarily decided in the Oregon litigation. Dkt. 65 at 9. In the Oregon litigation, the

19   court decided whether "AT&T's obligation to relocate at its expense survived BNSF's

20   conveyance of the railroad right of way" to the State of Oregon. *AT&T Communications-*

21   *East, Inc.*, 2006 WL 3408035 at *7. This case raises the question of whether AT&T is

22   obligated to relocate its facilities at its own expense despite BNSF's conveyance of

23   different property to a different party, an issue that was not squarely decided in the

24   Oregon litigation. The Court therefore concludes that issues raised in the instant matter

25   are not subject to issue preclusion, and BNSF's motion to dismiss is denied.

### III. MOTION FOR CONTINUANCE

26       BNSF moves for a continuance of the trial date and all pretrial deadlines on the

27

28   grounds that BSNF was only recently added as a party and has not had sufficient time to

ORDER - 10

conduct discovery and prepare for trial. Dkt. 59. Trial is currently scheduled for October 27, 2008. Dkt. 36. BNSF was made a party on December 4, 2007. Dkt. 42. BNSF seeks a continuance of six months. Sound Transit opposes the length of the proposed continuance on the grounds that such a lengthy continuance would interfere with construction of the Sounder commuter rail system. *See* Dkt. 64 at 2.

Trial courts have broad discretion in deciding whether to grant or deny a request for a continuance. *U.S. v. Flynt*, 756 F.2d 1352, 1358 (1985), *amended by* 764 F.2d 675 (9th Cir. 1985). Given BNSF's relatively recent entry into this case, the Court agrees that a continuance of the trial date and certain pretrial deadlines is appropriate. The Court is concerned, however, that the six-month continuance requested by BNSF may cause unnecessary prejudice to Sound Transit. The Court therefore concludes that a shorter continuance is proper, without prejudice to the parties seeking a longer continuance at a later date.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that BNSF Railway Company's FRCP 12(b)(6) Motion to Dismiss (Dkt. 56) is **DENIED**, and BNSF Railway Company's Motion for Continuance (Dkt. 59) is **GRANTED in part** and **DENIED in part** as provided herein and as follows: The trial date in this matter is continued to January 20, 2009, at 9:00 a.m., and the Clerk of Cou will enter a minute order resetting pretrial deadlines.

DATED this 14th day of July, 2008.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 11